IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| TERRY WINKLER, individually and on behalf of all others similarly situated, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CLEARY BUILDING CORP., | ) | |
| | ) | |
| Serve at: | ) | |
| | ) | |
| National Registered Agents, Inc. | ) | |
| 301 S. Bedford St., Ste. 1 | ) | |
| Madison, Wisconsin 53703-3691 | ) | |
| | ) | |
| Defendant. | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Terry Winkler ("Plaintiff"), individually and on behalf of all similarly situated employees, by and through undersigned counsel, for his Collective and Class Action Complaint against Defendant Cleary Building Corp. ("Defendant" or "Cleary"), states as follows:

### I.    Nature of the Action

1.     This is a wage and hour action arising from Defendant's practice of requiring non-exempt Field Employees to begin and end each workday at a Cleary branch or designated reporting location, perform work there, travel in company vehicles carrying tools, materials, equipment, and crew members to assigned jobsites, and then return to the branch at the end of the day, while paying that compensable work time through reduced "Drive Time" and "Drive Time Overtime" rates.

2.     This action challenges time after Field Employees reported to Defendant's branch or reporting location, began performing work for Defendant, traveled to and from assigned jobsites as part of the workday, and completed return tasks before the workday ended.

3.    Defendant's own payroll records identify the challenged hours, code them as "Drive Time" and "Drive Time Overtime," and show that Defendant paid those hours at rates far below Plaintiff's regular hourly rate and below the applicable minimum wage. Plaintiff's drive-time work was compensable at his $28.50 regular hourly rate for non-overtime hours and at his $42.75 overtime rate for overtime hours. Defendant instead paid that work at an unlawful hourly rate and used an unlawful regular rate to calculate overtime.

4.    The gravamen of this action is straightforward. Defendant recorded the challenged hours and counted them in its payroll system but compensated those hours under an undisclosed and unlawful rate structure that used a prohibited, non-bona fide hourly rate below the minimum wage improperly reducing wages owed, the regular rate of pay, and overtime compensation.

5.    Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, on behalf of himself and a proposed collective of similarly situated non-exempt Field Employees to recover unpaid overtime compensation, liquidated damages, attorney's fees, and costs.

6.    Plaintiff also brings this action under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, on behalf of himself and a proposed Illinois Rule 23 class to recover unpaid overtime compensation, treble damages, statutory monthly damages, attorney's fees, and costs.

## II.    **Jurisdiction and Venue**

7.    This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction over Count II under 28 U.S.C. § 1367 because this claim arises from the same common nucleus of operative facts as Count I and form part of the same case or controversy.

9. This Court may exercise personal jurisdiction over Defendant because Defendant is a Wisconsin corporation with its principal office in Verona, Wisconsin.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events, policies, payroll decisions, pay practices, and acts or omissions giving rise to the claims emanated from this District.

11. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

12. At all relevant times, Defendant's annual gross sales made or business done were in excess of at least $500,000.

13. At all relevant times, Defendant employed Plaintiff and other non-exempt Field Employees within the meaning of the FLSA.

14. At all relevant times, Defendant was an employer under the IMWL.

15. At all relevant times, Plaintiff and the members of the proposed collective and class were employees engaged in commerce or employed by an enterprise engaged in commerce.

16. At all relevant times, Plaintiff and the proposed collective and class members were non-exempt employees entitled to the protections of the FLSA and IMWL.

### III. Parties

17. Plaintiff Terry Winkler is an individual who worked for Defendant as an hourly foreman in Illinois, including through a branch or designated reporting location serving field operations.

18.    Plaintiff's written consent to join this action under 29 U.S.C. § 216(b) is filed with this Complaint.

19.    Defendant Cleary Building Corp. is a Wisconsin domestic business corporation.

20.    Defendant's principal office is located at 190 Paoli Street, Verona, Wisconsin 53593-1809, and its registered agent for service is National Registered Agents, Inc., 301 S. Bedford Street, Suite 1, Madison, Wisconsin 53703-3691.

21.    Defendant is a nationwide builder that designs, engineers, manufactures, delivers, and constructs customized pre-engineered buildings and related structures.

22.    Defendant has served clients since 1978 and operates branch offices and reporting locations in multiple states, including Illinois.

23.    Defendant employed non-exempt Field Employees, including foremen and crew members, under common timekeeping and payroll practices that included separate compensation codes for "Drive Time" and "Drive Time Overtime."

## IV.    Factual Allegations

### A.  Defendant's Field Operations and Daily Reporting Requirements

24.    Plaintiff uses the term "Field Employees" to refer to Defendant's non-exempt foremen and crew members who performed construction and erection work away from Defendant's offices.

25.    Field Employees performed construction, erection, delivery-related, loading-related, and return-related work at and between Defendant's reporting locations and customer jobsites.

26.    Foremen supervised the crew, drove company vehicles, performed or confirmed required vehicle inspections, and transported crew members, tools, materials, and equipment to

assigned jobsites, and crew members worked alongside the foreman at jobsites and participated in the branch-to-jobsite and jobsite-to-branch field-work Defendant required.

27.    Defendant required Plaintiff and other Field Employees to report first to a designated branch or local reporting location before going to the day's jobsite.

28.    Defendant did not permit Field Employees to bypass the reporting location and simply drive from home to the jobsite in their own vehicles for ordinary workdays.

29.    When Field Employees arrived at the reporting location, they parked their personal vehicles, clocked in, and began the workday.

30.    After reporting, Field Employees received assignments, directions, job information, and other instructions necessary for the day's work.

31.    After reporting, Field Employees gathered tools, hardware, safety equipment, materials, and other items needed for the day's work.

32.    Those tools, materials, and items were loaded onto a company truck and, when needed, onto a trailer or other equipment assigned to the job.

33.    Defendant required inspection of the company vehicles and pre-departure tasks before leaving the reporting location.

34.    After the reporting location work was completed, the company vehicles were driven to the assigned jobsite transporting crew members, tools, materials, and equipment.

35.    The trip from the reporting location to the jobsite occurred after the workday began and served Defendant's business interests by moving Defendant's crew, vehicles, tools, materials, and equipment to the customer worksite.

36.    Field Employees then performed Defendant's construction and erection work at the assigned jobsite.

37.     The workday did not end when Field Employees stopped active construction work at the jobsite.

38.     After site work ended, Field Employees were required to travel back to Defendant's branch or reporting location in the company vehicle.

39.     On return, the company vehicle had to be dropped off, and tools, materials, equipment, hardware, paperwork, and other items had to be unloaded, returned, secured, or otherwise handled as Defendant required.

40.     The return travel therefore occurred within the continuous workday and for Defendant's benefit.

41.     Defendant required this same basic sequence of reporting, preparation, loading, vehicle inspection, outbound travel, jobsite work, return travel, vehicle return, and unloading as part of its field operations.

42.     Defendant knew how the field operations were performed because the reporting location, departure process, jobsite work, return process, vehicle use, and payroll coding were all part of Defendant's ordinary business operations.

**B.  The Challenged Hours Are Compensable Working Time**

43.     The time Field Employees spent after reporting to Defendant's branch or reporting location and before final return tasks ended was compensable working time.

44.     Under 29 C.F.R. § 785.38, when an employee is required to report to a meeting place to receive instructions, perform work there, or pick up and carry tools, the travel from that designated place to the workplace is part of the day's work and must be counted as hours worked.

45.     Under 29 C.F.R. § 785.41, work performed while traveling is work time, including when an employee drives a truck, bus, automobile, boat, or airplane, or rides as a required helper.

46.    The challenged hours occurred after Plaintiff and other Field Employees reported to Defendant's premises or prescribed reporting location, received instructions, gathered or loaded tools and materials, inspected or prepared the company vehicle, and otherwise began the day's work.

47.    The outbound and return travel therefore fell within the workday and constituted hours worked under federal law.

48.    Illinois law independently defines "hours worked" to include all time an employee is required to be on duty, on the employer's premises, or at other prescribed places of work, together with additional time the employee is required or permitted to work for the employer. 56 Ill. Adm. Code § 210.110.

49.    Illinois law also recognizes travel performed for the employer's benefit as compensable work time. 56 Ill. Adm. Code § 210.110; 29 C.F.R. §§ 785.33-.41.

50.    Illinois law does not incorporate the federal Portal-to-Portal Act exclusion for preliminary or postliminary activities into its overtime provision. *Johnson v. Amazon.com Servs.*, LLC, 2026 IL 132016, ¶¶ 18, 20-23.

51.    Defendant's required reporting location work, receipt of instructions, vehicle inspections, loading, outbound travel, return travel, vehicle return, and unloading therefore constituted hours worked under Illinois law.

52.    Defendant recorded the challenged hours on payroll records rather than excluding them from time records altogether. Defendant nevertheless assigned those hours separate reduced pay rates that did not lawfully compensate Plaintiff and other Field Employees for all hours worked.

**C.  Defendant's Payroll Codes and Pay Practices**

53.     Defendant's payroll records for Plaintiff consistently distinguish work time from the challenged drive-coded work.

54.     Defendant paid Plaintiff's ordinary "Regular Hours" at $28.50 per hour.

55.     Defendant paid Plaintiff's ordinary "Overtime" hours at $42.75 per hour, which is 1.5 times $28.50.

56.     However, Defendant separately paid "Drive Time" at $5.15 per hour.

57.     In overtime weeks, Defendant separately paid "Drive Time Overtime" at $7.72 per hour, which is approximately 1.5 times $5.15.

58.     Defendant's use of a separate "Drive Time" rate confirms that Defendant tracked and knew about the challenged hours worked.

59.     Defendant's use of a separate "Drive Time Overtime" rate confirms that Defendant knew the challenged hours counted toward overtime workweeks and was used as a scheme and artifice to avoid properly paying overtime rates.

60.     Defendant's payroll system also separated vacation, public holiday, weather day, field-travel incentive, and other compensation categories, further confirming that Defendant could distinguish compensable work, paid leave, travel-related pay, and other payroll categories.

61.     Defendant used the drive-time coding and rate structure during the pay periods reflected in Plaintiff's pay statements. The same pay codes, rates, and coding logic recur week after week across those statements.

62.     Defendant therefore used a common pay practice to compensate branch-to-jobsite and jobsite-to-branch travel and related field-work time, and did so improperly.

- 8 -

63.     That common pay practice reduced both straight time wages and overtime compensation.

64.     The $5.15 drive-time rate was lower than Illinois's $15.00 minimum wage during the pay periods reflected in Plaintiff's records.

65.     The $5.15 drive-time rate was also lower than the federal minimum wage of $7.25.

66.     The $7.72 drive-time overtime rate was derived from the same unlawful $5.15 base rate.

**D. Defendant Lacked a Lawful Basis to Pay the Reduced Drive-Time Rate**

67.     The FLSA regular rate is determined by law and by the remuneration paid for employment, not by an employer's unilateral payroll label.

68.     Under 29 C.F.R. § 778.115, when an employee works at two or more non-overtime rates in the same workweek, the regular rate is the weighted average of those rates unless a lawful alternative applies.

69.     Under 29 C.F.R. § 778.318(b), absent a valid agreement setting a different rate for compensable nonproductive hours, the employee is owed the regular hourly rate established for productive work for all hours up to 40 and at least 1.5 times that rate for hours over 40.

70.     Under 29 U.S.C. § 207(g)(2) and 29 C.F.R. § 778.419, an employer seeking to pay overtime at the rate applicable to the type of work performed during overtime hours must establish different kinds of work, bona fide hourly rates, and an advance agreement or understanding with the employee. With that said, any separate lower rate for compensable nonproductive time must be paid at least at the applicable minimum wage.

71.     Defendant did not provide Plaintiff or other Field Employees with an advance written agreement, wage notice, handbook provision, signed acknowledgment, or other lawful pre-

work agreement establishing lower rate for particular work performed in regard to the compensable hours at issue.

72.     Regardless of whether there was such advanced notice or not, the $5.15 drive-time rate was not a lawful or bona fide lower hourly rate for work performed because it falls below federal and Illinois minimum wage.

73.     For Field Employees, the drive-coded hours were compensable work time integral to Defendant's construction operations.

74.     Defendant was required to calculate overtime using a lawful regular rate and lawful component rates, rather than a subminimum drive-time rate and a drive-time overtime rate derived from it. Because there is an absence of a lawful alternative-rate arrangement, Field Employees are owed compensation for the challenged hours at the regular hourly rate for hours up to 40 and at not less than 1.5 times that rate for hours over 40.

### E.  Representative Weekly Payroll and Damages Examples

75.     Plaintiff's pay statement for the week ending 11/9/2025 records 53.00 total hours worked. For this week, Defendant paid 30.19 regular hours at $28.50, 9.81 overtime hours at $42.75, 9.81 drive-time hours at $5.15, and 3.19 drive-time overtime hours at $7.72, for total gross pay of $1,354.97. This pay statement shows 13.00 drive-coded hours for the week utilizing a sub-minimum wage rate of pay and resulting overtime rate of pay.

76.     The drive-coded hours for that week should have been paid at the same $28.50 regular rate and $42.75 overtime rate Defendant paid for Plaintiff's work time, producing a $340.80 underpayment for that workweek.

77.     Plaintiff's pay statement for the week ending 11/16/2025 records 49.50 total hours worked. For this week, Defendant paid 30.51 regular hours at $28.50, 7.24 overtime hours at

$42.75, 9.49 drive-time hours at $5.15, and 2.26 drive-time overtime hours at $7.72, for total gross pay of $1,245.38.

78.    The drive-coded hours for this week should have been paid at the same $28.50 regular rate and $42.75 overtime rate Defendant paid for Plaintiff's work time producing a $300.77 underpayment for this workweek.

79.    Using Defendant's own recorded hours and Plaintiff's hourly rate, his pay statements clearly reflect unpaid overtime based on Plaintiff's hourly rate, along with liquidated damages, treble damages, statutory monthly damages, attorney's fees, costs, and interest.

80.    The pay statements of Plaintiff and those similarly situated reflect the same pay practice.

81.    The payroll records demonstrate Defendant's wage violations in a clear and measurable way and can be demonstrated as common proof from Defendant's own records.

**F.  Defendant's Pay Practice Was Common, Willful, and Centralized**

82.    Plaintiff's experience was not unique. Defendant employs non-exempt Field Employees in multiple states, including Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Utah, Wisconsin, and Wyoming.

83.    Defendant applied the same basic reporting location, travel, and return practices to non-exempt Field Employees in those operations.

84.    Defendant maintained centralized payroll coding that used "Drive Time" and "Drive Time Overtime" or substantially similar coding to compensate the challenged hours.

85.    Defendant knew Field Employees regularly worked workweeks exceeding 40 hours.

- 11 -

86.    Defendant knew the challenged travel occurred after reporting, after the workday began, and before the workday ended.

87.    Defendant knew the challenged hours involved the transport of crew members, tools, materials, and equipment in company vehicles.

88.    Defendant nevertheless paid those recorded hours at an improper reduced rate designed to lower labor costs.

89.    Defendant's wage violations are willful. Defendant knew or showed reckless disregard for whether paying recorded work time in this manner complied with federal and Illinois law.

90.    Defendant did not make a good faith effort to comply with the FLSA or IMWL as to the challenged work and pay practices at issue.

91.    Defendant's conduct injured Plaintiff and the members of the proposed collective and class by depriving them of wages, proper regular rates, and overtime compensation.

92.    Defendant thereby retained wages that should have been paid to Plaintiff and other similarly situated Field Employees.

## V.    Collective and Class Action Allegations

### A.  The FLSA Collective

93.    Plaintiff brings Count I as a collective action under 29 U.S.C. § 216(b) on behalf of himself and the following collective: All current and former non-exempt Field Employees who worked for Defendant in the United States at any time during the three years preceding the filing of this action and who were required to report to a branch or designated reporting location before traveling to or from an assigned jobsite and were paid any portion of that compensable work or

travel time through a "Drive Time," "Drive Time Overtime," or substantially similar pay code (the "FLSA Collective").

94. The FLSA Collective members are similarly situated because Defendant subjected them to a common pay practice.

95. Liability as to the FLSA Collective will turn on common proof, including Defendant's policies, payroll codes, pay rules, time records, jobsite assignments, branch practices, and testimony regarding field work.

96. The number and identities of FLSA Collective members are readily ascertainable from Defendant's payroll, timekeeping, personnel, and contact information records.

97. Notice to the FLSA Collective should issue in a Court approved form and should be disseminated by first-class mail, email, and text message to the last known contact information reflected in Defendant's records.

**B. The Illinois Rule 23 Classes**

98. Plaintiff brings Count II under Rule 23 on behalf of himself and the following class: All current and former non-exempt Field Employees who worked for Defendant in Illinois at any time during the three years preceding the filing of this action and who were required to report to a branch or designated reporting location before traveling to or from an assigned jobsite and were paid any portion of that compensable work or travel time through a "Drive Time," "Drive Time Overtime," or substantially similar pay code (the "Illinois Class").

99. The Illinois Class is so numerous that joinder of all members is impracticable.

100. Common questions of law and fact predominate over individualized issues, including whether Defendant required reporting location work and branch-to-jobsite and jobsite-to-branch travel as part of the workday, whether Defendant paid those compensable hours at

unlawful drive-time rates, whether Defendant paid drive-time hours below Illinois minimum wage, and whether Defendant used unlawful rates to compute overtime.

101.    Plaintiff's claims are typical of the claims of the Illinois Class because Plaintiff worked as a non-exempt Field Employee in Illinois, was required to report to a branch or reporting location, and was paid compensable travel and related work time through the challenged pay codes.

102.    Plaintiff will fairly and adequately protect the interests of the Illinois Class.

103.    A class action is superior to individual actions because Defendant's liability and class members' damages can be proven largely through common proof and standardized payroll evidence.

104.    Class treatment will promote judicial economy, consistency of adjudication, and the fair and efficient resolution of the controversy.

<u>**COUNT I**</u>

<u>**Violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1)**</u>

105.    Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

106.    At all relevant times, Plaintiff and the FLSA Collective were non-exempt employees entitled to overtime compensation under 29 U.S.C. § 207(a)(1).

107.    Defendant required Plaintiff and the FLSA Collective to report to a branch or reporting location, perform work there, and then travel in company vehicles to and from assigned jobsites as part of the workday.

108.    Plaintiff does not seek compensation under the FLSA for ordinary home-to-work or work-to-home commuting. Plaintiff seeks compensation for recorded work time after Field Employees reported to Defendant's prescribed location and before the workday ended on return.

109. The challenged travel and related work time was compensable hours worked under 29 C.F.R. §§ 785.38 and 785.41.

110. Defendant nevertheless paid those compensable hours under separate drive-time rates, including a $5.15 hourly drive-time rate and a $7.72 drive-time overtime rate reflected on Plaintiff's pay records.

111. Because the $5.15 drive-time rate was below the federal minimum wage, it was not a lawful separate rate for compensable nonproductive hours under 29 C.F.R. § 778.318(b) and was not a bona fide hourly rate for overtime purposes under 29 C.F.R. § 778.419.

112. Defendant further failed to calculate the regular rate lawfully for workweeks in which employees worked at two or more rates, including a drive-time rate and a regular hourly rate.

113. Defendant therefore failed to calculate and pay overtime using a lawful regular rate for all hours worked over 40 in a workweek.

114. Defendant's failure to lawfully pay overtime injured Plaintiff and the FLSA Collective by depriving them of overtime compensation required by 29 U.S.C. § 207(a)(1).

115. Defendant knew or showed reckless disregard for whether its compensation practices complied with the FLSA.

116. Defendant's violation of the FLSA was willful, entitling Plaintiff and the FLSA Collective to a three-year limitations period under 29 U.S.C. § 255(a).

117. As a direct and proximate result of Defendant's FLSA violation, Plaintiff and the FLSA Collective are entitled to unpaid overtime compensation, an equal amount as liquidated damages, attorney's fees, and costs under 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Collective, respectfully requests that the Court enter judgment in his favor and against Defendant on Count I and award the following relief:

a. conditional certification of the FLSA Collective under 29 U.S.C. § 216(b);

b. an order requiring Defendant to produce the names, last known addresses, email addresses, telephone numbers, employment dates, job titles, pay rates, and pay codes for all FLSA Collective members;

c. court-authorized notice to the FLSA Collective by U.S. mail, email, and text message;

d. unpaid overtime compensation;

e. an equal amount as liquidated damages;

f. pre-judgment and post-judgment interest;

g. reasonable attorneys' fees and costs;

h. a declaration that Defendant's challenged pay practices violated the FLSA; and

i. such other and further relief as the Court deems just and proper.

## COUNT II

### Violation of the Illinois Minimum Wage Law, 820 ILCS 105/4a

118. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

119. At all relevant times, Plaintiff and the Illinois Class were entitled to overtime compensation at not less than 1.5 times the regular rate at which they were employed for all hours worked over 40 in a workweek.

- 16 -

120.    Defendant required Plaintiff and the Illinois Class to work workweeks exceeding 40 hours, including workweeks in which the challenged drive-time hours pushed the workweek over 40 hours.

121.    Defendant paid overtime using unlawful drive-time rates and failed to calculate the regular rate lawfully.

122.    Defendant's $5.15 drive-time rate was below Illinois minimum wage and could not lawfully reduce the straight-time or overtime compensation owed for compensable hours worked in Illinois.

123.    Defendant's $7.72 drive-time overtime rate was derived from the same unlawful $5.15 base rate and did not constitute overtime compensation calculated from a lawful Illinois regular rate.

124.    Defendant therefore failed to pay Plaintiff and the Illinois Class all overtime compensation due under 820 ILCS 105/4a.

125.    Illinois law defines hours worked broadly, and Illinois law does not incorporate the federal Portal-to-Portal Act's preliminary or postliminary exclusion into the IMWL overtime provision.

126.    Plaintiff's own drive-coded hours also were work integral to Defendant's field operations and were payable at Plaintiff's lawful regular rate and overtime rate.

127.    Defendant's overtime underpayments injured Plaintiff and the Illinois Class.

128.    Under 820 ILCS 105/12(a), Plaintiff and the Illinois Class are entitled to recover the unpaid overtime compensation, treble the amount of the underpayments, costs, reasonable attorney's fees, and damages of 5% of the amount of the underpayments for each month they remained unpaid.

WHEREFORE, Plaintiff, individually and on behalf of the Illinois Class, respectfully requests that the Court enter judgment in his favor and against Defendant on Count II and award the following relief:

a. certification of the Illinois Class under Fed. R. Civ. P. 23 as to Count II;

b. unpaid overtime compensation due and owing;

c. treble damages under 820 ILCS 105/12(a);

d. damages of 5% of the amount of the underpayments for each month following the date of payment during which the underpayments remained unpaid, as authorized by 820 ILCS 105/12(a);

e. reasonable attorneys' fees and taxable costs;

f. pre-judgment and post-judgment interest;

g. a declaration that Defendant's challenged overtime pay practices violated 820 ILCS 105/4a; and

h. such other and further relief as just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

By:        */s/ S. Cody Reinberg*
S. Cody Reinberg, Mo. Bar #66174MO
Kevin J. Dolley, Mo. Bar #54132MO
HKM Employment Attorney LLP
7382 Pershing Ave., 1W
St. Louis, MO 63130
Phone/Fax: 314-391-9557
creinberg@hkm.com
kdolley@hkm.com

*Counsel for Plaintiff and those similarly situated*

- 18 -